Petro, Appellant, *v*. Secary Estate.

Argued March 13, 1961.   Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Archibald M. Matthews,* for appellant.

*Frank A. Orban, Jr.,* with him *Spence, Custer, Saylor & Wolfe,* for appellee.

OPINION BY MR. JUSTICE BELL, May 2, 1961:

Plaintiff brought an action of assumpsit against the Administratrix of the Estate of the defendant who died December 23, 1958. Plaintiff died after trial but pending this appeal and is now represented by his Administratrix. Plaintiff sought to recover on an *express oral* contract (a) the difference between the wages he was paid as assistant mine foreman and later as mine foreman and the usual wage of an assistant mine foreman and a mine foreman for the same period of time and (b) 10% of the profits. The alleged oral contract was entered into between plaintiff and defendant in December, *1951.* The claim was made, for the first time, in *1959* after defendant's death. Defendant's Administratrix (a) denied the contract, and (b) also pleaded as to part of the claim, the Statute of Limitations.

Plaintiff proved an oral contract which we shall hereinafter discuss in detail. Defendant proved that plaintiff made no demand for payment until June, 1959, and that several months before this demand he attempted to purchase the mine from defendant's estate without ever mentioning his claim for additional wages or for profits.

The Court nonsuited plaintiff with respect to his claim for additional wages because plaintiff failed to produce evidence sufficient to show the actual difference between the wages which he received and those which he allegedly should have received. The lower Court also entered a nonsuit with respect to plaintiff's claim for profits prior to 1954 because of the Statute of Limitations.

It was admitted that defendant made a profit in each of the 8 years from September, 1951, to and in-

cluding 1958, and that plaintiff was not paid any share of the profits during any of those years.

The jury found a verdict for defendant; a new trial was refused; and from the judgment entered on the verdict, plaintiff has appealed. Plaintiff alleges three errors, only two of which merit discussion. The first error alleged was the charge of the Court as to plaintiff's burden of proof. Since this was a claim against a decedent's estate the Court charged that plaintiff must establish his right to recover by evidence "characterized as clear, precise and indubitable, and it amounts to evidence beyond a reasonable doubt. Indubitable proof is defined as evidence that is not only found to be credible but of such weight and truthfulness as to make out the facts alleged beyond a reasonable doubt." That charge finds support in *Stafford v. Reed*, 363 Pa. 405, 70 A. 2d 345; *Gerfin v. Colonial Smelting & Refining Company, Inc.*, 374 Pa. 66, 97 A. 2d 71; *Vogel v. Taub*, 316 Pa. 41, 43, 173 A. 270, 271; *Doneyho v. Scottdale Connecting R.R. Co.*, 330 Pa. 207, 209, 199 A. 162, 164.

The standard of required proof or the test applicable in claims against a decedent's estate has been expressed in several other ways, each of which was so similar that it was intended to express the same thought. For example: "A claim can be established against a decedent's estate only by evidence which is clear, direct and positive, or, as is sometimes expressed, clear, precise and indubitable": *Cameron Estate*, 388 Pa. 25, 130 A. 2d 173; *Stafford v. Reed*, 363 Pa., supra; *Mooney's Estate*, 328 Pa. 273, 194 A. 893.

A claim against a dead man's estate "must be proved . . . by evidence which is clear, precise and convincing, or as it is sometimes expressed, clear, direct and positive": *Liggins Estate*, 393 Pa. 500, 143 A. 2d 349.

" ' " 'A claim . . . against the estate of the dead must be supported by clear and convincing evidence' " ' ":

*Martella Estate,* 390 Pa. 255, 135 A. 2d 372; *King Estate,* 387 Pa. 119, 126 A. 2d 463; *Grossman Estate,* 386 Pa. 647, 126 A. 2d 468; *Brightbill v. Boeshore,* 385 Pa. 69, 122 A. 2d 38; *Snyderwine v. McGrath,* 343 Pa. 245, 22 A. 2d 644; *Leadenham's Estate,* 289 Pa. 216, 137 A. 247.

Since this case must go back for retrial we take this opportunity to state that any reference to reasonable doubt should hereafter be eliminated, and that the appropriate test or standard of proof can be best described by stating that "a claim against a decedent's estate can be established and proved only by evidence which is clear, direct, precise and convincing."

Plaintiff's proof of the alleged oral contract consisted of the testimony of his son William Petro, who was 16 years of age at the time he overheard a conversation between his father and his uncle, in the latter's garage in December, 1951. He testified at the trial of this case on February 6, 1960.

William Petro testified: "A. . . . He told my father at the time that if my father would continue to work for him at his present rate or a lower rate of pay, as soon as the mine would make a profit, my father would get 10 per cent of the profits of that mine plus my uncle said he would give him an increase in wage to bring it to the normal amount. Q. What did your father say to that? A. My father said that he would do so. Q. Do you know of your own knowledge that your father continued then to work for Arthur Secary? A. Yes, sir."

This testimony of Petro was not contradicted by any evidence—no one else was present except Petro's father and his uncle, who were in another part of the garage. His testimony was not shaken by cross-examination. If believed, it was sufficient to satisfy plaintiff's burden of proof.

Plaintiff's second contention is that the trial judge erred in that part of the charge hereinafter quoted.

After the Judge had charged on the evidence, the burden of proof and the credibility of the witnesses, he said: ". . . The matter of credibility is important here because one of the parties to this alleged contract is dead and he cannot be here to speak for himself and therefore you must remember that *you are representing him to a certain extent*[*] through his estate because he himself cannot be here as is the other party of the contract."

Plaintiff took a general exception to the charge but no exception to this particular part. Moreover, in answer to the Court's inquiry as to whether there were any further requests for charge plaintiff submitted several requests but none pertained to the point now raised. Plaintiff, we repeat, made no specific request with respect to the portion of the charge above quoted; nevertheless, we believe that it was basic, fundamental and prejudicial error. A jury is an impartial, unbiased tribunal which represents only the Goddess of Justice and Law and seeks to arrive at a just verdict in the light of the evidence and the law. A jury does not represent either a dead man or any party to the proceedings, or anyone. While the trial Court believed that the jury's verdict in favor of defendant was both fair and just, it is impossible to say that the jury was not unduly influenced by this one unfortunate erroneous statement in the charge, even though the rest of the charge which covered 15 printed pages was both fair and able.

Plaintiff contends that the Statute of Limitations should not be applied in this case because of defendant's concealment of his profits. There is nothing in the record to justify this contention.

We must therefore reverse the judgment and remand the case to the Court below for retrial, limited,

---

[*] Italics throughout, ours.

however, solely to the claim for 10 per cent of the profits of the mine for the six year period prior to defendant's death.