Reuss Estate.

Argued April 29, 1966. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused July 15, 1966.

*Roland J. Christy,* with him *Albert A. Ciardi, Jr.,* for appellant.

*James S. Kilpatrick, Jr.,* with him *Thomas J. Burke* and *E. C. Kirk Hall,* for appellees.

OPINION BY MR. JUSTICE JONES, June 24, 1966:
This appeal attacks the validity of a decree of the Orphans' Court of Montgomery County which dis-

missed a claim for engineering services against a decedent's estate.

Edward H. Reuss, Jr., [decedent], died on May 4, 1959. At the audit of his estate, Nicholas Iovacchini, Jr., [claimant], a professional engineer, presented a claim in the amount of $8365 for engineering services against the decedent's estate. At the suggestion of the court and in accordance with the local rules of that court, claimant filed a statement of claim which outlined the basis of his claim. That statement of claim, inter alia, averred that claimant, as a professional engineer, on July 25, 1953, made a "written proposal" to decedent which stated: "I agree to do the structural steel and concrete design work including preparation of all necessary drawings on the above proposed building (Proposed Office Bldg., 10 Union Avenue, Bala-Cynwyd, Pa.) for the sum of five dollars ($5.00) per hour; that on July 27, 1953, the decedent wrote claimant: "I accept your proposal of July 25, 1953 to do the structural steel and concrete design work including preparation of necessary drawings for my proposed office and warehouse building 10 Union Avenue, Bala-Cynwyd, Pa.";[1] that claimant did render the required services and did render a bill on June 7, 1954, to decedent for $400 (80 hours at $5 per hour) which decedent paid; that claimant continued to render services and, on February 4, 1959, rendered a statement to decedent for $8365 (1673 hours at $5 per hour) which bill has not been paid; that the "charge . . . is in accordance with the contract between the claimant and the decedent, and is also the fair and reasonable value of said services."[2]

---

[1] It was stipulated by the parties that decedent signed this letter.

[2] Despite the argument of counsel for claimant to the contrary, the decedent's estate was not required to plead in response to this statement of claim.

60

Initially, it must be noted from an examination of this statement of claim that: (a) claimant's letter of July 25, 1953, contained no limitation upon the number of hours claimant was to perform engineering services nor no provision for the time or times when claimant was to be paid; (b) claimant performed services for over four and one-half years, after rendering the initial bill for $400, without any demand upon decedent for payment; (c) the claim is squarely based upon an express contract, i.e., the proposal contained in the letter of July 25 and the acceptance contained in the letter of July 27, and not upon quantum meruit.[3]

The court below referred the claim to a master. The master held hearings at which only the claimant presented testimony and, upon the completion of said hearings, the master recommended dismissal of the claim; the court, accepting such recommendation, dismissed the claim.

The claimant, disqualified to testify under the "Dead Man's Rule" (Act of May 23, 1887, P. L. 158, §5, cl. (e), 28 P.S. §322),[4] was forced to rely upon testimony other than his own. Initially, claimant took the position that, since *admittedly* decedent signed the letter of July 27, such letter constituted an *acceptance* of the *offer* contained in the letter of July 25. In his report, the master stated: "To sustain his burden of proving a contract claimant would go backward rather than forward; from acceptance to offer, rather than

---

[3] We cannot accept the contention of claimant that the theory of recovery set forth in the statement of claim is in the alternative, i.e., express contract *or* quantum meruit. The language in the statement of claim (paragraph 14) "The charge . . . is also the fair and reasonable value of said services" clearly refers to the price referred to in the alleged contract of $5 per hour.

[4] Claimant's contention that this disqualification was waived by certain admissions of one of accountants' counsel is refuted by the record.

from offer to acceptance. Although a contract cannot arise unless there is first an offer and then an acceptance of the offer, all that claimant has proven conclusively is that *an* offer he made to decedent was accepted. Just what that offer was has not been established by admissible evidence." The letter of July 27 was received in evidence but the letter of July 25—a carbon copy of which claimant presented at trial—was not received in evidence because there was no evidence the original was ever mailed or deliverd to decedent, that the "proposal" set forth in the carbon copy of the July 25 letter was the "proposal" to which reference was made in the letter of July 27 nor that claimant had ever called upon decedent's representatives to produce the original letter. Claimant did not lay the proper grounds for the receipt in evidence of the letter of July 25 and it was properly refused admission in evidence. However, even had such letter been received in evidence, it is our view claimant had not established his claim.

Assuming both letters should have been received of record and that decedent, by his July 27 letter, did *accept* the *proposal* contained in claimant's July 25 letter, we then have an offer by decedent whereby the former was to perform engineering services for the latter for which the latter would pay at five dollars per hour. To what amount claimant was entitled under this contract would depend on the extent of the engineering services rendered by claimant. To prove this claimant relied on both documentary and oral evidence.

The documentary evidence consisted of 32 engineering drawings plus certain computations and calculations. The latter—a bundle of sheets containing computations—were in nowise identified nor qualified for admission and are not properly part of the instant record. The drawings—32 in number—bore the name of the claimant but there was no competent proof that

such drawings were prepared by the claimant. Claimant attempted to qualify these drawings by the testimony of W. C. Hansell. Hansell, an engineering student, in 1955 was introduced by decedent to the claimant and told claimant would assign him some work to be structurally detailed by him. Of the 32 drawings, Hansell positively identified 3 upon which he had worked; although certain he had used more than 3 drawings, Hansell could not identify the other 29 drawings. It is clear that only 3 of the drawings were admissible in evidence. The balance of 29 drawings were clearly not qualified for admission.

Claimant then produced the oral expert testimony of a professional engineer, K. W. Holt. Holt testified that to make the 32 drawings—only 3 of which should have been admitted of record—and the computations and calculations—none of which were qualified for admission—, in his opinion, would require eight months working forty hours per week which, at $5 per hour, would amount to $7550. Such testimony—even if relevant on the question of recovery—cannot prove the amount due on the alleged express contract.

The claimant has failed to establish that which was owing by decedent under the alleged express contract. Although claiming $8365—1673 hours at $5 per hour—at best, under Holt's testimony, he proved $7550.[5] Moreover, Holt's testimony was based on evidence the bulk of which was not in evidence. Certainly, it is obvious that claimant, even though an express contract had been proven, has failed to prove that which was due and owing under such contract.

It is hornbook law that claims against a decedent's estate must be established by evidence which is "clear, direct, precise and convincing": *Petro v. Secary Es-*

---

[5] Whether the 80 hours for which claimant was paid $400 entered into this estimate remains unanswered of record.

*tate,* 403 Pa. 540, 543, 170 A. 2d 325; *Petruzzi Estate,* 410 Pa. 554, 557, 190 A. 2d 314. Claimant fails to even approach this qualitative standard of proof of his claim.

Claimant next urges that, even though he cannot prove an express contract to pay fixed compensation, he can still recover the fair and reasonable value of his services on a quantum meruit theory. It' is clear that claimant has bottomed his claim upon an express contract theory; unequivocally, claimant's statement of claim indicates such to be true.

In *Burr Estate,* 381 Pa. 547, 548, 113 A. 2d 712, we said: "It is well settled that where a claim is made upon express contract to pay a fixed sum, on failure to prove the contract, claimant may not recover on a quantum meruit: [citing authorities]."[6] Neither the Pennsylvania Rules of Civil Procedure nor the Orphans' Court Rules of this Court have affected the rule of *Burr Estate.*

Upon a theory of quantum meruit claimant cannot recover. Having failed to prove an indebtedness under the alleged express contract, the claimant's claim was properly dismissed.

Decree affirmed. Claimant to pay costs.

Mr. Justice ROBERTS concurs in the result.

---

[6] See also: *Zawada v. Pa. System Bd. of Adjustment,* 392 Pa. 207, 213, 140 A. 2d 335.