## In re TIRE WORKERS ASBESTOS LITIGATION.

### Civ. A. Nos. 88–4702 and 88–4703.

United States District Court,
E.D. Pennsylvania.

April 21, 1989.

---

618

Jerry Lyons, Charles A. Klein, Philadelphia, Pa., for plaintiff.

S. Courtney Gray, William M. Bendon, G. Daniel Bruch, Jr., Philadelphia, Pa., for Eagle–Picher Industries, Inc.

James D. Coleman, Philadelphia, Pa., for Raymark Indust.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

### INTRODUCTION

In 1988, the law firm of Allen L. Rothenberg filed a series of Multiple Plaintiff Asbestos Complaints on behalf of former tire workers employed at the Firestone Tire and Rubber Plant located in Pottstown, Pennsylvania. The parties subsequently scheduled 28 depositions for plaintiffs in the first two Multiple Plaintiff Complaints. In answers to defense Master Interrogatories Set I, all the tire worker plaintiffs stated that they first became aware that asbestosis was a compensable illness during a tire worker union meeting at the union hall in Pottstown in May of 1986 ("May 1986 meeting"). At this meeting, Gordon Stemple, Esquire, a partner in the law firm of Stemple and Boyajian in Century City, California, and founder and director of The National Tire Workers' Litigation Project addressed the plaintiffs' union Local 336. Defendants have requested that the plaintiff-deponents testify as to what was said and done at the meeting, and by whom. Plaintiffs' counsel has taken the position that the requested information is protected by the attorney-client privilege and have, therefore, instructed the deponents not to answer any questions concerning the meeting other than who attended, who introduced Stemple to the meeting, the fact that the attorney spoke, and whether any deponent signed a document authorizing Stemple to act on his behalf as an attorney. As a result, defendant John Crane, Inc. ("Crane") has filed a motion to compel discovery into the May 1986 meeting. This motion has been joined in by defendants, The Center for Claims Resolution, Owens–Illinois, Inc. Fibreboard Corporation, Uniroyal, Inc., Eagle–Picher Industries, Inc., Owens–Corning Fiberglas Corp.,

Empire–Ace Insulation Manufacturing Corp., the Flintkote Company, Sepco Corporation, Witco Corporation, Anchor Packing Company, and Allied–Signal, Inc. For the reasons which follow, the motion is granted.

## BACKGROUND

In April 1986, at the invitation of Harry Gamotan, a former local union president in California, Ronald E. Squibb ("Squibb") the president of plaintiffs' union, Local 336, traveled to California to get information about reports that a number of tire workers at Firestone's Salinas California plant had tested positive for asbestos-related illness. Deposition of Ronald E. Squibb, hereinafter referred to as Squibb deposition, at 37, 44, 51, 56. After he received the invitation to go to California, Squibb discussed the invitation with members of his executive board, all of whom approved the trip. Squibb deposition at 54, 56. In California, Squibb attended a meeting in Los Angeles at which other local union presidents were present as well as Stemple and an attorney by the name of Earl Price. Squibb deposition at 58, 59. At the meeting in Los Angeles, Stemple informed the various union presidents of the examination results of the Salinas tire workers. Squibb deposition at 63. After the meeting in Los Angeles, the group of union presidents, including Squibb, traveled to Salinas where they attended a meeting at a local armory along with a substantial number of local tire workers. Squibb deposition at 65–70. Stemple addressed this group. Squibb deposition at 72. Although Squibb testified that at the beginning of this meeting, he had not yet retained any lawyer to represent him in an asbestos-related action, Squibb deposition at 74, 75, he later testified that it was in Los Angeles before he traveled to Salinas when he requested that Stemple represent Squibb and "any member of my local union that wanted representation." Squibb deposition at 77, 104. After he arrived back in Pennsylvania, Squibb disclosed to the members of the executive board of Local 336 the information he learned in California about the Tire Workers' Litigation Project. Squibb deposition at 124. As a result, the executive board decided to invite Stemple and Mr. Price to Pottstown, Pennsylvania to talk to the local union about the Tire Workers' Litigation Project. Squibb deposition at 127. A notice was posted at the Firestone plant in Pottstown informing the tire workers of a "VERY IMPORTANT MEETING" to be held at the Local 336 Union Hall, the subject of which was "OCCUPATIONAL DISEASE." The notice further stated "DON'T MISS THIS SPECIAL MEETING." A copy of this notice is attached as Exhibit A. Union tire workers, officers and Stemple attended the meeting. At the very beginning of this May 1986 meeting, Stemple "advised those present that the only people who were eligible to remain at the meeting were those individuals who were seeking information concerning their legal rights in contemplation of potential litigation which might be brought arising out of their possible exposure to asbestos and other toxic substances in their work places." Declaration of Gordon A. Stemple at 1. Stemple also "stated to all those persons present that all matters discussed at this meeting were protected by attorney-client privilege." *Id.* According to Stemple, the purpose of the meeting was to provide information concerning the legal rights present and former tire workers might have arising out of their possible exposure to asbestos and other toxic substances in their work place. *Id.* At the end of the meeting a document entitled "MEMBERSHIP APPLICATION FORM NATIONAL TIRE WORKERS LITIGATION PROJECT" was made available to the tire workers. The form contained, *inter alia*, a place for a tire worker to print his name, address, how many years he worked in the tire building industry and the names of all the tire building facilities where he has been employed. The form also instructed a tire worker to check one of the following two boxes:

( ) I DO NOT already have a lawyer who is representing me for a chemical or asbestos-related work injury.

( ) I already have a lawyer who is representing me for a chemical or asbestos-related work injury.

A copy of this membership application form is attached as Exhibit B. At least one tire worker, George Stamm, testified that he attended this meeting in order to find out if he had a medical problem and to get legal advice. Deposition of George Stamm at 148. However, at least one other tire worker, Robert Rohrbach, testified that he attended this meeting "just to see what it was about" and that he did not consider Stemple to be representing him until after the meeting. Deposition of Robert L. Rohrbach at 62. During the ensuing weeks, the union tire workers underwent asbestos screening in a van ("examobile") furnished by the National Tire Workers Litigation Project. The screening consisted of pulmonary function tests and chest x-rays. The results of these tests and x-rays were reviewed by physicians in California. During the summer of 1986, the union members received the results of the asbestos screening.

Crane alleges that discovery has revealed, however, that several of the union members who underwent asbestos screening in the examobile and later became plaintiffs in the underlying litigation, actually had little personal contact with asbestos-containing products at the Firestone plant. *See e.g.* depositions of John J. Connelly, Jr., Francis Reimert, James A. Sgro and Winfred Wertman attached to Crane's motion as Exhibits B–E. Crane alleges that discovery has further revealed that chest x-rays taken of these same union members by family or factory physicians were all negative for disease or illness. It is, therefore, Crane's contention that "the May 1986 union meeting was part of a ruse to perpetrate a fraud upon this Court and maintain frivolous—if not speciously groundless and false—litigation." Memorandum of Law in Support of Motion to Compel Discovery at 4. Indeed, Crane points out that Raymark Industries, Inc. has filed suit in the District of Kansas alleging that actions taken by Stemple, local counsel, the diagnosing doctors and representative tire workers similar to those in the underlying litigation amounted to fraud. *Raymark Industries v. Stemple, et al.,* 714 F.Supp. 460 (D.Kan.1988). In order to determine whether fraud is present in the underlying litigation, Crane seeks to compel discovery into the May 1986 meeting. Plaintiffs claim the attorney-client privilege.

## DISCUSSION

As a preliminary matter, we have grave doubts whether even an attorney-client *relationship* existed between Stemple and the union tire workers at the time of the May 1986 meeting. The plaintiffs contend that such an attorney-client relationship "actually arose several months before the meeting, when Squibb, on behalf of his union members, contacted Stemple to inquire about asbestos issues." Brief in Support of Plaintiffs' Response to defendant John Crane Inc.'s Motion to Compel Discovery at 9. We do not agree.

In the first instance, Squibb's deposition testimony regarding his alleged retention of Stemple was not credible. Specifically, Squibb testified that it was in Los Angeles, after he had first met Stemple, when he requested that Stemple represent him and "any member of my local union that wanted representation." Squibb deposition at 77, 104. However, this testimony contradicted Squibb's earlier testimony that, as of the time he attended the tire worker meeting in Salinas, an event which occurred after Squibb's initial visit to Los Angeles, he had not yet retained any lawyer to represent him in an asbestos-related action. Squibb deposition at 74, 75. Such a contradiction makes one wonder whether Squibb, while he was in California, actually did ask Stemple to represent him or "any member of my local union that wanted representation."

In the second instance, assuming that Squibb actually did ask Stemple to represent him or any member of his union, Squibb only had authority to retain Stemple to represent Squibb and, perhaps, the interests of his union as one entity. However, Squibb did not have authority to retain Squibb to represent the *individual*

*members* of his union.[1] Asbestosis is in the nature of a *personal* tort. Therefore, only an individual who *himself* has been diagnosed as suffering from the effects of asbestosis has the right to retain an attorney and bring suit. Accordingly, Stemple could not become the attorney for any individual tire worker unless he was specifically retained by that injured individual tire worker. Certainly, plaintiffs must admit that if a personal tort such as battery has been committed by certain police officers against individual union members during a union strike, the union president could not hire an attorney to represent the individual members in their suits against the police officers for assault and battery. That is because the injury is personal to the individual union member. Likewise, in the absence of any union by-laws indicating the contrary, Squibb could not retain Stemple to represent a union member in their personal injury suits against manufacturers of asbestos. We, therefore, do not believe an attorney-client relationship arose between Stemple and the Pottstown tire workers through Squibb's contacts with Stemple in California.

 Even if an attorney-client relationship did exist between Stemple and the plaintiff tire workers at the time of the May 1986 meeting, the communications which the available discovery indicate took place at the May 1986 meeting are simply not privileged. The scope of the protection afforded by the attorney-client privilege in the context of the case *sub judice*, is determined by resort to state law. *See* Fed.R. Evid. 501; Fed.R.Civ.P. 30(c). Pennsylvania has codified the attorney-client privilege in 42 Pa.Cons.Stat.Ann. § 5928 (Purdon 1982) which provides:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

Thus, the attorney-client privilege, as codified in Pennsylvania, is limited and protects only information communicated in confidence by the client to counsel for the purpose of obtaining legal advice. *See Panko v. Alessi*, 362 Pa.Super. 384, 524 A.2d 930 (1987); *In re Westinghouse Electric Corp. Uranium Contracts Litigation*, 76 F.R.D. 47, 56 (W.D.Pa.1977). Accordingly, the attorney-client privilege protects only confidential facts disclosed by the tire workers to Stemple and not facts communicated by Stemple to the tire workers (except to the extent that the communication was based on facts originally revealed by the tire workers). *In re Westinghouse, supra; City of Shamokin v. West End Nat. Bank*, 22 Pa. D & C 3d 232 (1982).

In the case *sub judice*, the plaintiff tire workers, as the parties seeking to invoke the privilege, have failed to satisfy the standard set forth in 42 Pa.Cons.Stat.Ann. § 5928. There is absolutely no evidence before the court that the plaintiff tire workers communicated any confidential information to Stemple during the May 1986 meeting. The only facts concerning the May 1986 meeting that have been discovered indicate that this meeting consisted of nothing more than Stemple delivering a pre-fabricated presentation concerning the legal rights each tire worker might have as a result of possible exposure to asbestos, just as he had done at similar meetings across the country. Although plaintiffs state in their Brief in Support of Plaintiffs' Response to defendant John Crane's Motion to Compel Discovery at 2, 9, that communications were exchanged at the meeting, there is absolutely no evidence before the court to indicate that any type of traditional attorney-client dialogue took place between Stemple and the tire workers. Rather, it appears that the *only* communication that took place was in the form of a monologue by Stemple. Nor, is there any evidence that even prior to the May 1986 meeting any of the union tire workers who attended the meeting had even met Stemple let alone communicated any confidential facts to him upon which he could base his

---

1. We note that plaintiffs have not produced any union by-laws indicating that Squibb was cloaked with authority to engage an attorney on an individual member's behalf.

presentation. In fact, at least one tire worker, Robert Rohrbach, testified that he attended this meeting "just to see what it was about." As a result, none of Stemple's remarks or possible activities at the May 1986 meeting could have possibly derived from, or related to, a fact relayed to him by the union tire workers. In addition, plaintiffs cannot claim that they have satisfied the standard for attorney-client privilege by contending that Stemple based his remarks at the May 1986 meeting on previous communications with Squibb. In the first instance we doubt very much that Stemple based any remarks he made at the May 1986 meeting on anything Squibb may have told him. The remarks appear to have consisted of nothing more than a repeat of one of Stemple's pre-fabricated representations he made to other unions in the country. In the second instance, as noted above, Squibb could not hire Stemple to represent the individual members for a *personal* tort such as asbestosis and, therefore, any facts conveyed by Squibb to Stemple cannot be attributed to Stemple's purported tire worker clients.

■ Because this court finds that the plaintiffs have failed to sustain their burden regarding the elements of attorney-client privilege in order to invoke that privilege and because the plaintiffs could not, at the oral argument, demonstrate any prejudice they would suffer if the requested information was disclosed,[2] we shall grant Crane's motion to compel.

### ORDER

AND NOW, this 20th day of April, 1989, upon consideration of the Defendants' motions to compel discovery into the May 1986 union meeting at the Pottstown, Pennsylvania union hall (the "Meeting"), and Plaintiffs' opposition thereto, it is hereby ORDERED and DECREED that the motions are GRANTED. Deponents and witnesses in all tire worker asbestos personal injury lawsuits brought by the law firm of Allen L. Rothenberg are ORDERED to provide full testimony, and answer fully the questions of defense counsel, with respect to:

(1) What any attorney said, did, showed, displayed, and/or represented at the Meeting;

(2) What any union official said, did, showed, displayed, and/or represented at the Meeting; and

(3) What union members said, did, showed, displayed, represented, signed, and/or received at the Meeting.

IT IS SO ORDERED.

---

**2.** In this regard, we note that just because the requested information may be discoverable, does not mean such information may be admissible at trial.

EXHIBIT A

# -VERY-IMPORTANT-

# -MEETING-

EXHIBIT "F"

PLACE: Local 336 Union Hall

DATE: Wednesday - 4-30-86

TIME: 7:15AM - 3:15P.M. - 11:15 P.M

SUBJECT:

EXHIBIT
17
AUK 12/20/88

"OCCUPATIONAL DISEASE"

*Irvin B Michael*

DON'T MISS THIS -

EXHIBIT
6A
1-31-89 JF

# SPECIAL MEETING

EXHIBIT B

MANAGEMENT PERSONNEL ARE NOT ENTITLED TO "TWLP"
MEMBERSHIP OR MEDICAL SCREENING

MEMBERSHIP APPLICATION FORM

NATIONAL TIRE WORKERS LITIGATION PROJECT

Please print clearly:

NAME_____

ADDRESS_____

_____ZIP_____

HOME PHONE ( )_____

SOCIAL SECURITY NUMBER_____

I have worked in the tire building industry for _____ years.

Please list all tire building facilities where you have been employed:

| | | |
|---|---|---|
| _____ | _____ From_____ To_____ |
| NAME OF COMPANY | CITY |
| _____ | _____ From_____ To_____ |
| NAME OF COMPANY | CITY |
| _____ | _____ From_____ To_____ |
| NAME OF COMPANY | CITY |

PLEASE CHECK (√) ONLY ONE OF THE TWO BOXES BELOW:

( ) I DO NOT already have a lawyer who is representing me for a chemical or asbestos-related work injury.

( ) I already have a lawyer who is representing me for a chemical or asbestos-related work injury.

Date:_____ _____
 SIGNATURE OF APPLICANT

*Please allow 2-3 weeks for processing of your application and delivery of your confidential project I.D. card.